**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| MICHAEL BLANTON, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:24-cv-00922 |
| | ) | |
| v. | ) | |
| | ) | |
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

# DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

**PAGE**


INTRODUCTION ........................................................................................1

ARGUMENT ..............................................................................................2

I. BLANTON MISUNDERSTANDS *AMERICAN PIPE* TOLLING ..........2

II. *BELL* DOES NOT PROVIDE SUFFICIENT NOTICE OF WHO IS IN THE PUTATIVE CLASS..................................................4

  A. The *Bell* Class Is Plainly a "Fail-Safe" Class ...................................4

  B. Even If It Were Not "Fail-Safe," the *Bell* Class Fails *American Pipe*'s Specificity and Clarity Requirements.................5

III. BLANTON'S CASE AND *BELL* LACK THE EVIDENTIARY OVERLAP NECESSARY TO JUSTIFY TOLLING.................................6

CONCLUSION..........................................................................................7

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Almaraz v. Haleas*,
2009 WL 10739926 (N.D. Ill. Sept. 1, 2009) .... 3

*Am. Pipe & Const. Co. v. Utah*,
414 U.S. 538 (1974) .... passim

*Arban v. W. Pub. Corp.*,
345 F.3d 390 (6th Cir. 2003) .... 5

*Crown, Cork & Seal Co. v. Parker*,
462 U.S. 345 (1983) .... 7

*Raie v. Cheminova, Inc.*,
336 F.3d 1278 (11th Cir. 2003) .... 3

*Tucker v. Cnty. of Monmouth*,
159 Fed. Appx. 405 (3d Cir. 2005) .... 5

**STATUTES**

29 U.S.C. § 2615 .... 5

## INTRODUCTION

Blanton's response brief fundamentally misinterprets the principles governing *American Pipe* tolling, ignoring the clear requirements of specificity and clarity. Rather than engaging with established precedent, he advances a novel interpretation unsupported by legal authority, seeking to transform tolling into a loophole for vague, fail-safe classes. By contrast, CSX's argument is firmly rooted in Supreme Court precedent and subsequent case law, which make clear that tolling applies only when a class action provides sufficient notice of both the claims and the potential plaintiffs.

The *Bell* class definition at issue here exposes the fatal flaws in Blanton's argument. This vague, fail-safe class prevents CSX from identifying potential members or preparing a defense, violating the notice requirements central to *American Pipe*. As case law has repeatedly held, tolling cannot apply to an ambiguous, open-ended class that leaves defendants guessing about the claims and parties they must address. Blanton's attempt to sidestep this issue by asserting that class definitions are irrelevant is not only unsupported by precedent but also defies common sense. His approach would render tolling an unchecked loophole, eroding fairness and turning statutes of limitations into meaningless technicalities. Such a result is untenable, and his claims should be dismissed outright.

## ARGUMENT

### I. BLANTON MISUNDERSTANDS *AMERICAN PIPE* TOLLING

Blanton conclusorily asserts that CSX "invents parameters" and "fabricate[s] requirements for the application of *American Pipe* tolling." Blanton Br. 4. But Blanton gets it exactly backwards. Blanton scarcely engages with the actual text of *American Pipe* and instead "invents" his own interpretation, unsupported by the case itself. Most tellingly, Blanton fails to cite *even a single case* backing his novel reading of *American Pipe*, whereas CSX's motion (at 9–11, 15–17) is grounded in substantial precedent.

*American Pipe* held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554. But the Court also made clear that such tolling applies only when the class action properly "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *Id.* at 555. Only when these requirements are met does tolling "satisf[y]" the "policies of ensuring essential fairness to defendants and of barring a plaintiff who has slept on his rights." *Id.* at 554–55.

This requirement—a clear and precise class definition that gives adequate notice of the claims and potential plaintiffs involved—comes directly

from *American Pipe* itself. And if there were any doubt about what *American Pipe* requires, subsequent case law reinforces this principle. Courts have held that *American Pipe* mandates that "tolling will not apply if the class allegations are so vague or ambiguous as to be insufficient notice for defendants 'to determine both the subject matter and size of the prospective class.'" *Almaraz v. Haleas*, 2009 WL 10739926, at *7 (N.D. Ill. Sept. 1, 2009) (quoting *American Pipe*, 414 U.S. at 555); *see also* CSX Br. 9–11, 15–17 (citing cases).

Indeed, the Eleventh Circuit has explicitly stated that plaintiffs cannot "rely on only [an] ambiguous class definition to support their argument for tolling under *American Pipe*." *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1283 (11th Cir. 2003). Yet Blanton argues the exact opposite, asserting that "[t]he original class definition has no bearing on the tolling analysis," because "classes are defined and refined through discovery." Blanton Br. 5. But Blanton does not allege that *Bell's* original class definition was ever amended. That definition is therefore the barometer for whether notice was adequate.

Moreover, instead of engaging with the established legal principles in *American Pipe* and subsequent case law, Blanton attempts to divert attention by claiming that these cases are factually distinguishable. But this is a red herring. CSX is not asserting that its case has exactly the same the *facts* as the precedents cited, but rather that the *legal principle* these cases uphold—requiring a clearly defined class to ensure defendants receive adequate notice

of the claims and potential plaintiffs—is the correct interpretation of *American Pipe*. And Blanton has no response to the cited cases on this point.[1]

## II. *BELL* DOES NOT PROVIDE SUFFICIENT NOTICE OF WHO IS IN THE PUTATIVE CLASS

The putative class in *Bell*—"[i]ndividuals who, at any time from [March 2015] to the resolution of [the *Bell* lawsuit], were disciplined or terminated for using FMLA leave"— cannot justify tolling, both because it is a fail-safe class and because it otherwise lacks the specificity and clarity required by *American Pipe*. (CSX Br. 11-16.) Blanton's response to these points is unpersuasive.

### A. The *Bell* Class Is Plainly a "Fail-Safe" Class

Because its membership is contingent on the outcome of future events—*i.e.*, success on the merits—a fail-safe class by definition fails to provide defendants with the notice required by *American Pipe*. (CSX Br. 12-13.) Blanton claims that the *Bell* class was not a fail-safe class. He is wrong.

The parties agree that a "failsafe class is one 'whose definition incorporates the elements of a successful legal claim, such that determining whether an individual or entity is a member of the class 'front-ends a merits

---

[1] A single hypothetical illustrates the flaws in Blanton's reading and highlights why it conflicts with *American Pipe*. Imagine a suit that had been stayed with a class defined as "all CSX employees who violated the law for any reason over the previous ten years." Under Blanton's reading of *American Pipe*, any CSX employee falling within this vague and overly broad definition could later claim the benefit of tolling—despite CSX having no meaningful notice of the specific claims being asserted or the identities of the potential plaintiffs. Yet this scenario not only contradicts the principles of *American Pipe* but also undermines the very purpose of statutes of limitations, transforming tolling into an indefinite loophole rather than a carefully limited exception.

determination on [the defendant's] liability.'" Blanton Br. 4–5 (citation omitted). The sole point of disagreement, then, is whether a class defined as "individuals who … were disciplined or terminated for using FMLA leave," Compl. ¶ 23, incorporates a successful legal claim. It clearly does.

Under the FMLA, it is illegal to discipline or terminate an employee simply *for using FMLA leave*. 29 U.S.C. § 2615. Courts have consistently held as much using language *identical* to the class definition at issue here. *See, e.g.*, *Arban v. W. Pub. Corp.*, 345 F.3d 390, 403 (6th Cir. 2003) ("If the employer is found to have retaliated against the employee *for using FMLA leave*, the employer is subject to a claim for compensatory damages." (emphasis added)); *Tucker v. Cnty. of Monmouth*, 159 Fed. Appx. 405, 406 (3d Cir. 2005) (The FMLA "prohibits employers from retaliating or discriminating against employees *for using FMLA leave*." (emphasis added)). Determining whether Blanton or any other member belongs to this class, therefore, necessarily requires a merits determination on whether their termination or discipline was unlawful. Only if CSX's actions were indeed in violation of the FMLA would an individual fall within this class, making the definition inherently fail-safe.

### B. Even If It Were Not "Fail-Safe," the *Bell* Class Fails *American Pipe*'s Specificity and Clarity Requirements

The *Bell* class—defined to encompass potentially any employee assessed any type of discipline over a 10-year period who might later claim that their

discipline was for having used FMLA leave—lacks sufficient detail to allow CSX to reliably identify potential members, as required by *American Pipe*. Blanton argues (Br. 7) that "this is only an issue if CSX is admitting that it disciplines or terminates all 20,000 of its employees for taking FMLA leave." But if that were true, there would be no problem identifying who is or is not in the class: it would include any FMLA-taking employee who was disciplined for any reason. It is precisely because CSX does **not** discipline employees simply for taking FMLA leave that the *Bell* class is so vague and ambiguous.

Blanton's separate assertion that CSX should understand the potential scope of the claims based on the specific allegations made by the plaintiffs in *Bell* (at 6–8) misunderstands *American Pipe* and oversimplifies the challenge posed by an undefined class. While each *Bell* plaintiff alleged a certain type of misuse as a basis for discipline, the broad class definition makes it unclear what other claims might arise or which other employees might fall within its scope. Without such specifics, CSX is unable to gauge the size and nature of the class, which *American Pipe* tolling requires to ensure adequate notice.

## III. BLANTON'S CASE AND *BELL* LACK THE EVIDENTIARY OVERLAP NECESSARY TO JUSTIFY TOLLING

Finally, Blanton dismisses CSX's concern that his case (challenging discipline assessed in 2021) involves different evidence and witnesses than those in *Bell* (challenging discipline assessed in 2018), asserting that *American*

*Pipe* does not impose a "pleading rule" for similarity in evidence. But at least two Justices (in concurrences in both *American Pipe* and *Crown*), along with lower courts have read *American Pipe* to require that the "suit raises claims that 'concern the same evidence, memories, and witnesses as the subject matter of the original class suit.'" *Crown, Cork & Seal Co*, 462 U.S. 345, 355 (Powell, J., concurring); CSX Br. 16–17 (citing cases).

This evidentiary requirement is both logical and essential to ensuring fairness under *American Pipe*. Tolling is intended to preserve claims without prejudicing defendants, not to transform class actions into a mechanism for pursuing entirely new or distinct litigation under the guise of the original case. When class definitions are overly broad or fail-safe, as in *Bell*, they create the risk of tethering future claims to a case that never adequately outlined the scope of the claims or the identity of class members. Such vagueness forces defendants to prepare for an unbounded array of potential claims, violating the fundamental notice and fairness principles upon which *American Pipe* tolling is predicated. Thus, Blanton's arguments fail not only to align with precedent but also to respect the practical safeguards that *American Pipe* was designed to protect.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Blanton's Complaint in full and with prejudice.

Dated: November 26, 2024

Respectfully submitted,

*/s/ Thomas R. Chiavetta*

Thomas R. Chiavetta (*pro hac vice*)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3975
tchiavetta@jonesday.com

*Attorney for Defendant CSX Transportation, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2024, a true and accurate copy of the foregoing was filed using the CM/ECF system which will send notification of such filing to the Court and Plaintiff's counsel.

*/s/ Thomas R. Chiavetta*