**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MICHAEL BLANTON,

Plaintiff,

v.

CSX TRANSPORTATION, INC.,

Defendant.

CASE NO. 3:24-CV-00922

**DEFENDANT'S MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT KAREN SMITH AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS


Page

INTRODUCTION ..... 1

PROCEDURAL AND FACTUAL BACKGROUND ..... 2

A. Blanton's FMLA Leave and Termination ..... 2

B. Overview of Smith's Report ..... 3

STANDARD ..... 5

ARGUMENT ..... 6

I. SMITH IS NOT QUALIFIED TO TESTIFY AS AN EXPERT ..... 6

A. Smith Has Never Served As An Expert Or Published Or Authored Anything In Her Field ..... 6

B. Smith's Experience Does Not Qualify Her as an Expert in This Case ..... 7

II. SMITH'S OPINIONS AND TESTIMONY ARE IRRELEVANT AND WILL NOT ASSIST THE TRIER OF FACT ..... 9

A. Smith's Opinions and Testimony Are Factually Irrelevant ..... 10

B. Smith's Improper Legal Conclusions Should Be Excluded ..... 10

C. Smith Usurps the Role of the Jury by Attempting to Substitute Her Own Perception of the Evidence for the Jury's ..... 14

III. SMITH'S OPINIONS AND TESTIMONY ARE UNRELIABLE ..... 15

A. Smith Fails to Cite the Specific Sources of the Supposed "HR Standards" She Purports to Apply ..... 16

B. Smith's Testimony Is Not Based on Sufficient Facts or Data ..... 18

C. Smith's Methodology Is Unreliable ..... 20

CONCLUSION ..... 21

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Allison v. McGhan Med. Corp.*,
184 F.3d 1300 (11th Cir. 1999) ........................................ 10

*Ask Chemicals, LP v. Comput. Packages, Inc.*,
593 F. App'x 506 (6th Cir. 2014) ........................................ 18

*Clark v. Healthsouth Corp.*,
2021 WL 129821 (M.D. Fla. Jan. 14, 2021) ........................................ 11

*Daubert v. Merrell Dow Pharm., Inc.*,
43 F.3d 1311 (9th Cir. 1995) ........................................ 10

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ........................................ 4, 15, 18

*Easton v. Asplundh Tree Experts, Co.*,
2017 WL 4005833 (W.D. Wash. Sept. 12, 2017) ........................................ 14

*EEOC v. Total Sys. Servs., Inc.*,
221 F.3d 1171 (11th Cir. 2000) ........................................ 10

*Elrod v. Sears, Roebuck & Co.*,
939 F.2d 1466 (11th Cir. 1991) ........................................ 10

*Georges v. Dominion Payroll Servs., LLC*,
2018 WL 2088751 (E.D. Va. May 4, 2018) ........................................ 16

*Harvey v. Novartis Pharm. Corp.*,
895 F. Supp. 2d 1206 (N.D. Ala. 2012) ........................................ 7

*Hendrix ex rel. G.P. v. Evenflo Co.*,
609 F.3d 1183 (11th Cir. 2010) ........................................ 5, 6, 20

*Juday v. FCA US LLC*,
57 F.4th 591 (7th Cir. 2023) .......... 13

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) .......... 16

*Li v. Ne. Univ.*,
2023 WL 3722227 (W.D. Wash. May 30, 2023) .......... 16, 17

*Montgomery v. Aetna Cas. & Sur. Co.*,
898 F.2d 1537 (11th Cir. 1990) .......... 10, 14, 15

*Moore v. Intuitive Surgical, Inc.*,
995 F.3d 839 (11th Cir. 2021) .......... 5

*Navarro v. Hollywood Imps. Ltd., Inc. & AutoNation, Inc.*,
2024 WL 5263811 (S.D. Fl. Nov. 22, 2024) .......... 16, 18

*Pagan-Aponte v. McHugh*,
2011 WL 1789962 (M.D. Tenn. May 10, 2011), *aff'd*, 510 F. App'x 438 (6th Cir. 2013) .......... 10

*Parton v. United Parcel Serv.*,
2005 WL 5974445 (N.D. Ga. Aug. 2, 2005) .......... 8, 10

*Payne v. C.R. Bard, Inc.*,
606 F. App'x 940 (11th Cir. 2015) .......... 7

*Prichard v. Hyundai Motor Mfg. of Ala., LLC*,
418 F. Supp. 3d 930 (M.D. Ala. 2019) .......... 13

*Prosper v. Martin*,
989 F.3d 1242 (11th Cir. 2021) .......... 15

*Seamon v. Remington Arms Co.*,
813 F.3d 983 (11th Cir. 2016) .......... 15

*Skypoint Advisors, LLC. v. 3 Amigos Prods. LLC.*,
585 F. Supp. 3d 1326 (M.D. Fla. 2022) .......... 7

*United States v. Frazier*,
387 F.3d 1244 (11th Cir. 2004) .................................................................. 15, 18

**RULES**

FED. R. EVID. 702 ................................................................................ 4, 5, 8, 9, 16

**REGULATIONS**

29 C.F.R. § 825.307 ................................................................................................. 12

29 C.F.R. § 825.308 ................................................................................... 4, 11, 12, 17

## INTRODUCTION

Karen Smith's report and testimony should be excluded. As a threshold matter, Smith is not qualified to serve as an expert witness in this or any case – she has never previously served as an expert, has never published or written anything in her field, holds no college degree, and has nothing more than low-level Human Resources ("HR") experience. Plaintiff's counsel met her because he also represents her husband, who has an ongoing lawsuit against CSX. If Smith qualifies as an expert then virtually anyone who ever held a position in HR does.

Smith's opinions and testimony are also irrelevant. Rather than offer testimony that would assist the trier of fact, Smith offers conclusory opinions about whether CSX's investigation and decision-making process complied with supposed "generally accepted HR standards" that are untethered to the actual issues in this case – whether CSX honestly believed that Blanton abused his FMLA leave and disciplined him on that basis.

Her opinions are also plainly unreliable: she invokes ill-defined "HR standards" and "best practices" without ever identifying their specific source. When pressed, Smith admitted her methodology has never been published, tested, or peer-reviewed. Further, Smith seeks to usurp the role of the jury by substituting her own perception of the evidence for theirs. Her opinions and testimony should be excluded.

## PROCEDURAL AND FACTUAL BACKGROUND

### A. Blanton's FMLA Leave and Termination

Blanton was approved to take FMLA leave for diabetes, hypertension, and sleep apnea. (MSJ, Ex. A (Blanton Dep.) 48:11-22, 51:3–6.) CSX prohibits employees from using FMLA leave solely to avoid working on holidays or weekends. (MSJ, Ex. A-2 (Blanton Dep. Ex. 4) at CSX_BLANTON_001184 (Feb. 26, 2020 FMLA Approval).) Consistent with this policy, CSX warned Blanton multiple times regarding FMLA misuse. (MSJ, Ex. D-1 (Aug. 26, 2016 Warning Letter); MSJ, Ex. D-2 (Dec. 2, 2020 Final Warning Letter).) On December 2, 2020, CSX issued a "final warning" to Blanton for a Thanksgiving holiday mark-off that "extend[ed] [his] recent pattern of using FMLA leave in an apparent effort to avoid working on holidays." (MSJ, Ex. D-2 (Dec. 2, 2020 Final Warning Letter).)

Notwithstanding these warnings, just weeks later, Blanton marked off FMLA from 9:52 a.m. on Christmas Eve until 9:43 a.m. on Christmas morning. (MSJ, Ex. B (Tingley Decl.) ¶ 5.) Had Blanton not marked off, he would have been called to work on Christmas Eve. (*Id.* ¶ 6.) Less than four hours after marking up, at 1:04 p.m., Mr. Blanton marked off sick – he did not work on Christmas Eve or Christmas. (*Id.* ¶ 7.) His Christmas Eve mark-off, combined with those earlier that year over Mother's Day weekend, Memorial Day weekend, Father's Day weekend, the Fourth of July, and Thanksgiving/Black Friday, led CSX to believe that Blanton

had used FMLA leave solely to avoid working over Christmas Eve. (MSJ, Ex. A-4 (Hearing Tr.) at 11:18–13:41, 18:40-45, 21:2–8, 22:36–23:5.) Accordingly, pursuant to the collective bargaining agreement, CSX charged Blanton with misusing FMLA leave and held a hearing on the charges. (MSJ, Ex. A-3 (Jan. 4, 2021 Charge Letter).) Based on the testimony and evidence, Macon Jones from CSX's Labor Relations department determined the charge was proven and recommended termination; CSX Superintendent Anthony Ferrera agreed with Jones and Blanton was dismissed. (MSJ, Ex. C-4 (Disciplinary Correspondence).)

**B. Overview of Smith's Report**

Throughout her report, Smith purports to rely on "generally accepted HR standards" and "best practices" for investigating suspected FMLA misuse. (Ex. A, Expert Report of Karen Smith ("Report") at 1-2, 5–7.) She claims to be evaluating whether CSX's "investigation and decision-making process regarding Mr. Blanton's alleged misuse of approved intermittent FMLA leave reflected generally accepted HR standards and practices." (*Id.* at 1.) Smith's report addresses six purported deficiencies in CSX's process, all of which amount to conclusory assertions that CSX should have done more before disciplining Blanton – without ever identifying the specific source or treatise that establishes the "standards" she claims CSX violated.

Smith opines that CSX (1) "proceeded to discipline based on an unvalidated inference rather than an evidence-supported finding"; (2) "did not

conduct reasonable pre-disciplinary fact-gathering with the employee"; (3) "did not use key HR/FMLA compliance tools to corroborate (or disprove) suspected misuse"; (4) did not conduct "a balanced review of potentially exculpatory information"; (5) "escalated discipline without independent corroboration"; and (6) overall, CSX's process "reflects a lack of reasonable diligence, insufficient corroboration, incomplete evaluation of key context, and a premature escalation to termination." (*Id.* at 5–8.)

Smith ultimately concludes that CSX's process was "inconsistent with best practices for investigating suspected FMLA misuse." (*Id.* at 7.) Yet Smith never identifies a specific treatise, publication, or authoritative source that establishes the particular "standards" she claims CSX violated. Her only cited sources are a general Department of Labor employer's guide, a single Society of Human Resources Management webpage, and the recertification regulation itself (29 C.F.R. § 825.308) – none of which establish the sweeping "standards" she purports to apply. *See id.* at 4. Smith's qualifications section, moreover, reveals that she has never previously served as an expert witness in any case, has never published or authored anything in her field, and has never before testified as an expert. (*Id.* at 1–2; *see also* Ex. B, Deposition of Karen Smith, ("Smith Dep.") 52:20–53:7, 54:1–18.)

## STANDARD

Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert testimony. Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . : (a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." FED. R. EVID. 702 (emphasis added).

In the Eleventh Circuit, trial courts consider these factors through a "rigorous three-part inquiry." *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010). The Court must determine whether: (1) "the expert is qualified to testify competently," (2) "the methodology by which the expert reaches his conclusions is sufficiently reliable," and (3) the testimony will "assist[] the trier of fact," *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850–51 (11th Cir. 2021). The "proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each" of those three requirements. *Hendrix*, 609 F.3d at 1194. Ultimately, "it is the unique role of the district court" to "execute[] its gatekeeper function,"

ensuring that only properly admissible expert evidence reaches the jury. *Id.* at 1203.

## ARGUMENT

### I. SMITH IS NOT QUALIFIED TO TESTIFY AS AN EXPERT

Before reaching the questions of relevance and reliability, the Court must first determine whether "the expert is qualified to testify competently." *Hendrix*, 609 F.3d at 1194. Smith is not. She admits that she has never served as an expert witness in any case, has never published or authored anything in her field, has never presented externally on any topic, and has limited, low-level HR experience. (Smith Dep. 52:20–53:7, 53:16–54:18, 56:1-3.)

#### A. Smith Has Never Served As An Expert Or Published Or Authored Anything In Her Field

Rule 26(a)(2)(B) requires that an expert report contain, among other things, "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition" and "a list of all publications authored in the previous 10 years." Fed. R. Civ. P. 26(a)(2)(B)(iv)–(v). Smith's report contains neither – because there is nothing to list. Smith admits that she has never before been retained as an expert (Smith Dep. 52:20–23), nor has she testified in any other case. (*Id.* 52:24-53:7.)

Smith has also never authored any articles or publication on ***any*** HR topic, let alone those on which she purports to opine in her report.[1] (*Id.* 53:16–54:5.) Because Smith has never subjected her views to any form of professional scrutiny, her testimony should be excluded. *See Skypoint Advisors, LLC. v. 3 Amigos Prods. LLC.*, 585 F. Supp. 3d 1326, 1331-32 (M.D. Fla. 2022) (excluding expert as "not even minimally qualified" where there was "no indication that [the expert] ha[d] ever testified in court as an expert or ever authored any publications") (emphasis in original); *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 943 (11th Cir. 2015) (excluding expert as unqualified, in part because the expert "has taught no seminars and published no articles" on the subject matter in which he purported to be an expert); *Harvey v. Novartis Pharm. Corp.*, 895 F. Supp. 2d 1206, 1211 (N.D. Ala. 2012) (similar).

### B. Smith's Experience Does Not Qualify Her as an Expert in This Case

An expert can be qualified based on their experience. However, Smith is not. Her professional experience consists entirely of serving as an in-house HR practitioner at three companies – The Pete Store (2016–present), Solo Cup/Dart Container (2011–2016), and Lowe's Home Improvement (2006–2010). (Report at 1–2.) At Lowe's, each of her HR manager roles was limited to a single

[1] In fact, that report does not even bear her signature, and she was unaware the federal rules required it to be signed. (*Id.* 23:11–24.)

store. (Smith Dep. 51:9 - 52:5). Similarly, at Solo Cup/Dart Container, Smith oversaw a single facility and had no direct reports. (*Id.* 46:24-47:25, 50:5-51:3.) And when Smith joined The Pete Store, she was likewise a "Department of One"; her HR department now consists of seven people, including Smith. (*Id.* 36:6–14, 38:4–12.) Before entering the HR field, Smith was a property manager for over a decade. (Smith Dep. 55:16–56:21.) She did not attend college. (*Id.* 27:24–28:16.)

Smith has never worked in the railroad industry in any capacity (Smith Dep. 56:22–24), has never managed human resources for a workforce that, like CSX, operates 24 hours a day, 7 days a week, 365 days a year (*id.* 57:4–7), and has no experience dealing with a unionized workforce (*id.* 108:23-109:1). Despite claiming in her report that she "repeatedly address[ed] the practical HR issues that arise when an employer suspect leave misuse" (Report at 2), she could only recount a single example throughout her HR career of investigating potential FMLA misuse. (*Id.* 24:7-27:6, 52:9–19.) She also confirmed that she has never been involved in an FMLA misuse matter that resulted in termination and could not recall whether she had ever been involved in such a matter that resulted in discipline. (*Id.* 27:11-20.) When asked what qualifies her to serve as an expert, Smith identified only her "time in the industry" and "educational background and the hands-on experience." (*Id.* 21:16–20.) But time served as an HR generalist – without

publications, presentations, prior expert engagements, or any meaningful experience in the relevant industry or with the very issues on which she purports to be an expert – does not make one "qualified" under Rule 702. *See Parton v. United Parcel Serv.*, 2005 WL 5974445, *2-4, 7 (N.D. Ga. Aug. 2, 2005) (excluding HR expert as unqualified based on the expert's lack of education specific to human resources, his lack of relevant professional experience, and lack of knowledge of the defendant's employee-discipline practices).

It is fair to question how or why Smith was ever retained to testify in this case. Smith provided the answer: She met Plaintiff's counsel while testifying in a lawsuit brought by her husband – a former CSX employee – against CSX; Plaintiff's counsel also represents her husband. (Smith Dep. 9:22–12:4, 42:7–15, 111:4–112:16.) This relationship of convenience cannot transform Smith into something she is not: an expert witness. Smith is utterly unqualified to testify as such. The Court should exclude her opinions and testimony on this basis alone.

## II. SMITH'S OPINIONS AND TESTIMONY ARE IRRELEVANT AND WILL NOT ASSIST THE TRIER OF FACT

To be admissible, expert opinions and testimony must be relevant; to be relevant, expert testimony must "help the trier of fact." Fed. R. Evid. 702(a). Smith fails this basic test – her testimony does not speak to the real issues in this case and instead consists of irrelevant critiques of CSX's investigation

process measured against amorphous "HR standards" that have no bearing on the legal question before the jury.

### A. Smith's Opinions and Testimony Are Factually Irrelevant

Expert testimony aids the trier of fact if it "'. . . logically advances a material aspect of the proposing party's case.'" *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995)). Smith's testimony does not do so. Should this case get to trial, the jury's task will be to decide whether CSX honestly believed Blanton misused FMLA leave and disciplined him on that basis, not whether CSX's actions complied with some amorphous and ill-defined "generally accepted HR standard." *See EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176-77 (11th Cir. 2000); *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991); *Parton*, 2005 WL 5974445, *6. Smith's critiques of whether CSX used available "compliance tools," conducted "balanced" fact-gathering, and abided by "generally accepted HR standards" are "simply not relevant to the question of whether [Plaintiff] w[as] subjected to unlawful [retaliation]." *Pagan-Aponte v. McHugh*, 2011 WL 1789962, at *3 (M.D. Tenn. May 10, 2011), *aff'd*, 510 F. App'x 438 (6th Cir. 2013).

### B. Smith's Improper Legal Conclusions Should Be Excluded

Smith's testimony should also be excluded for another reason: it offers improper legal conclusions dressed up as expert opinions. It is well-settled that

legal conclusions should not be admitted, *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990), as "[o]nly the Court may instruct the jury on relevant legal standards." *Clark v. Healthsouth Corp.*, 2021 WL 129821, at *5 (M.D. Fla. Jan. 14, 2021). Although Smith disclaims offering "legal conclusions regarding liability" (Report at 1), her opinions are precisely that – she opines on whether CSX's actions were "consistent with lawful, non-retaliatory HR practices" and whether CSX complied with regulatory frameworks (*id.* at 1, 3). Smith struggled with this tension during her deposition, admitting that what FMLA regulations require "is a legal question for the Court to decide," while simultaneously insisting "I can testify to a jury about the FMLA regulations." (Smith Dep. 110:15–22.). As set forth below, her report is replete with conclusions about CSX's compliance with those very regulations – and those conclusions are wrong.

Even if Smith were permitted to offer legal conclusions (which she is not), her opinions should be excluded because they misstate the law. A central tenet of Smith's report is that CSX should have requested recertification under 29 C.F.R. § 825.308 before disciplining Blanton. (Report at 4.) Her report notes that CSX "did not request Blanton to recertify" and was "not familiar with the regulatory recertification provision," and she identifies recertification as the primary "compliance tool" CSX failed to use. (Report at 5–6.) Yet Smith admitted that the recertification process is a "permissive process, it's not mandatory, meaning every

time you suspect that someone misuses FMLA, the regulations don't require that you recertify that employee." (Smith Dep. 90:13–20.) Smith thus concedes that CSX was not legally required to do the very thing she criticizes it for not doing.

Smith's opinion is also legally wrong because it conflates two distinct regulatory frameworks. The recertification regulation she cites – 29 C.F.R. § 825.308 – permits an employer to request recertification of the underlying medical condition "no more often than every 30 days" or when "circumstances described by the previous certification have changed significantly." But that provision addresses whether the employee continues to have a serious health condition warranting FMLA leave – not whether the employee is using that leave honestly on a particular occasion. This case is not about whether Blanton substantiated his need for leave in the abstract; CSX approved his FMLA certification and never disputed that he suffered from a qualifying condition. The question is whether CSX honestly believed that Blanton used FMLA leave dishonestly on specific occasions – *i.e.*, to avoid working on holidays and not because of any approved medical reason. Recertification would not answer that question.

Similarly, Smith faults CSX for not consulting with Blanton's doctors or CSX's medical department. (Report at 4–6.) But the regulations permitting employers to obtain second and third medical opinions apply only when the employer "has reason to doubt the validity of a medical certification" – i.e.,

whether the employee truly has a serious health condition. See 29 C.F.R. § 825.307(b), (c). That is not the question here. CSX did not challenge whether Blanton truly has an FMLA-approved medical condition; it challenged whether he was truly using FMLA leave for that reason or simply as a way to avoid work. Smith cites no authority for her proposition that second opinions should have been sought under these circumstances, because no such authority exists.

Courts regularly uphold discipline where the employer had a reasonable belief that the employee was abusing approved leave – without requiring recertification or medical consultations as a precondition. *See Prichard v. Hyundai Motor Mfg. of Ala., LLC*, 418 F. Supp. 3d 930, 933, 939 (M.D. Ala. 2019) (dismissing FMLA claims where employer investigated pattern of leave without engaging in recertification); *Juday v. FCA US LLC*, 57 F.4th 591, 596 (7th Cir. 2023) (upholding discharge based on "honest suspicion of FMLA abuse" after employer investigated overlapping leave patterns, without requesting recertification or seeking second or third opinions). Smith's attempt to fault CSX for not using regulatory tools that she herself concedes are not required finds no support in the law and underscores the irrelevance of her opinions.

### C. Smith Usurps the Role of the Jury by Attempting to Substitute Her Own Perception of the Evidence for the Jury's

Smith also litters her report with conclusions about issues the jury is perfectly suited to address on its own. Expert testimony is not helpful if it "merely tell[s] the jury what result to reach." *Montgomery*, 898 F.2d at 1541. Nor is it helpful "when it addresses an issue that is within 'the common knowledge of the average layman.'" *Easton v. Asplundh Tree Experts, Co.*, 2017 WL 4005833, at *5 (W.D. Wash. Sept. 12, 2017) (citation omitted). Smith's conclusions about the sufficiency of CSX's investigation are exactly the type of credibility and weight-of-the-evidence determinations reserved for the jury. Smith herself acknowledged that she has never held a position where she had HR oversight over any union employees (Smith Dep. 108:23–109:1) – yet she purports to opine on the "procedural fairness" of an investigation conducted under a collective bargaining agreement that she has never reviewed (*id.* 57:15-17).

Even a cursory review of Smith's report reveals that it is rife with improper opinions on topics within the jury's sole province:

- Smith concludes that CSX "proceed[ed] on an asserted 'pattern' without confirming it is truly indicative of misuse – and without evaluating alternative legitimate explanations." (Report at 6.) The jury is perfectly capable of evaluating the strength of CSX's pattern evidence without Smith telling it what to think.

- Smith opines that CSX's omission of pre-hearing contact with Blanton "impermissibly increased the risk that the employer would act on misunderstanding, incomplete information, or untested assumptions, and it undermined the reliability and perceived fairness of the investigation." (*Id.*) Neither the fairness of CSX's investigation nor the sufficiency of the information CSX considered is relevant to the honest-belief question. Even if those issues were relevant, the jury could evaluate them without expert assistance.

- Smith further opines that CSX's reliance on the holiday pattern while ignoring exculpatory information constitutes "material omissions because they affect the core inference CSX relied upon." (*Id.* at 7.) The weight and sufficiency of CSX's evidence is for the jury – not for Smith – to decide.

Because Smith "merely tell[s] the jury what result to reach," her testimony is not helpful and should likewise be excluded on that basis. *Montgomery,* 898 F.2d at 1541.

## III. SMITH'S OPINIONS AND TESTIMONY ARE UNRELIABLE

Smith's opinions should also be excluded because they are not reliable. In assessing reliability, courts generally focus on four factors: (1) "whether the theory or technique in question can be (and has been) tested," (2) "whether [the theory or technique] has been subjected to peer review and publication," (3) "its known or potential error rate" and (4) "whether it has attracted widespread acceptance within a relevant scientific community." *Daubert*, 509 U.S. at 580; *Seamon v. Remington Arms Co.*, 813 F.3d 983, 988 (11th Cir. 2016). Smith's deposition confirmed that her methodology fails every one of these factors.

Even the most qualified experience-based experts "must explain *how* that experience leads to the conclusion reached, why that experience is a

sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Frazier*, 387 F.3d 1244, 1261, 1265 (11th Cir. 2004). The expert must "'employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Another district court in a related case has already excluded another HR "expert" – Beth De Lima – finding her testimony was "too unreliable to be admitted under Rule 702" because she never identified the source of what she says are industry standards. (Ex. C (*Pack Daubert* Opinion) at 4–5.) This Court should follow suit.

### A. Smith Fails to Cite the Specific Sources of the Supposed "HR Standards" She Purports to Apply

The Court's gatekeeping function requires more than simply "taking the expert's word for it." FED. R. EVID. 702 (advisory committee's note to 2000 amendments). Courts evaluating whether HR expert testimony is reliable require such witnesses to show "***how*** [they] determined what constitutes . . . industry standard[s]." *Navarro v. Hollywood Imps. Ltd., Inc. & AutoNation, Inc.*, 2024 WL 5263811, at *2 (S.D. Fl. Nov. 22, 2024) (emphasis added) (excluding expert's testimony on "HR best practices/the industry standard of care," for lack of reliability); *Georges v. Dominion Payroll Servs., LLC*, 2018

WL 2088751, at *5 (E.D. Va. May 4, 2018) (same); *Li v. Ne. Univ.*, 2023 WL 3722227, at *24 (W.D. Wash. May 30, 2023) (same).

Smith consistently invokes "generally accepted HR standards," "best practices," and "core HR investigation principles." (*See* Report at 1, 5–8.) Yet she never identifies any authoritative source for these supposed standards. To be sure, in her report, Smith cites three external sources: (1) a DOL employer's guide to the FMLA, (2) a single SHRM webpage on limiting intermittent FMLA abuse, and (3) the recertification regulation at 29 C.F.R. § 825.308. (*Id.* at 4.) However, none of these sources establish the sweeping investigation "standards" Smith purports to apply.

Tellingly, when asked where the SHRM article she purports to rely on discusses reviewing an employee's social media for evidence of misuse – one of the "best practices" Smith claims CSX should have followed – Smith admitted: "I don't see it in that." (Smith Dep. 82:25-83:24.) Similarly, she noted that the "best practice" of utilizing private investigators to investigate FMLA misuse was "not in [her] documents" and conceded that using private investigators is not "required." (*Id.* 101:1–14.) And when asked whether her "core HR investigation principles" were written down in any other publications or treatises, Smith conceded: "Written, no." (Smith Dep. 107:18–25.) Smith's inability to locate her own purported standards in the very sources she cites demonstrates the unreliability of her opinions. (*See* Ex. C (*Pack Daubert*

Opinion) at 4 (excluding similar HR expert because she "never cites specific documents or guidance" that support her "HR Standards" opinions.)

To the extent Smith claims she relied on her experience to develop these supposed standards, her testimony and opinions are unreliable because she failed to explain "how [her] experience leads to the conclusion reached, why [her] experience is a sufficient basis for the opinion, and how [her] experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261; *see also Navarro*, 2024 WL 5263811, at *2. and, as discussed (*supra* at 7-9), Smith has no experience in the railroad or any unionized environment and has never been involved in an FMLA misuse matter that resulted in termination – her experience (or lack thereof) thus, cannot serve as a "sufficient basis for [her] opinion[s]." *Frazier*, 387 F.3d at 1261.

**B. Smith's Testimony Is Not Based on Sufficient Facts or Data**

Smith's testimony and opinions also lack adequate foundation. "Proposed [expert] testimony must be supported by appropriate validation – *i.e.*, 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590. Yet Smith's report relies on a one-sided presentation of "assumed facts" drawn exclusively from Plaintiff's characterization of the record.

An opinion based solely on one party's hand-picked facts is inherently unreliable. *See Ask Chemicals, LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 510 (6th Cir. 2014). Smith expressly confirmed at deposition that "the facts for

[her] opinions came entirely from materials selected and provided to [her] by plaintiff's counsel." (Smith Dep. 72:22–73:8.) She did not review any deposition testimony other than CSX FMLA Manager Jolanda Johnson's October 2018 deposition – which was taken approximately two years before Blanton was ever charged with FMLA misuse. (Smith Dep. 13:10-25, 66:4–67:11.) She did not review any correspondence between Labor Relations and the decision-maker regarding Blanton's discipline (*id.* 17:19-18:3), did not review the collective bargaining agreement that governed the terms and conditions of Blanton's employment as CSX (*id.* 75:3–11), and did not review Blanton's FMLA medical certification. (*Id.* 69:4–15.)

These gaps are fatal. Smith did not know the medical conditions for which Blanton was certified to take FMLA leave (*id.* 73:23–25), and when asked whether she requested the medical certification that "would have told [her] what conditions he's certified for," she admitted she "did not." (*Id.* 81:20–23.) She does not know who made the decision to terminate Blanton after the hearing (*id.* 92:4–11), and thus admitted she does not know what evidence the decision-maker relied upon (*id.* 92:12–93:13). When asked whether she knew Blanton's "history of marking off FMLA over Christmas," Smith responded only that she knew "the charged history, which was those two days" – i.e., Christmas Eve and Christmas Day 2020 – and could not say whether she took into account testimony that Blanton had marked off FMLA over Christmas

four consecutive years, though she agreed it "raises concerns." (*Id.* 76:22-77:18.) Smith was also unaware that CSX sent Blanton a letter in August 2016 specifically warning him that "it appear[ed] that [he] [was] misusing FMLA leave" on holidays. (*Id.* 96:22–25 ("I do not have that information.").) Her opinions lack foundation.

Further, several of Smith's "assumed facts" embed legal conclusions or characterizations that Smith uncritically accepts. For example, Smith states as a "fact" that "CSX did not determine whether Blanton's supposedly suspicious pattern of using FMLA on holidays was actually a pattern" (Report at 4, Fact 10), and that CSX did not "account for facts that could cause legitimate use to create the supposed pattern" (*id.*, Fact 11). These are not neutral facts – they are advocacy positions that Smith has adopted wholesale and repackaged as expert analysis. Smith's opinions and testimony are based on insufficient (and one-sided) facts and data, providing further grounds to exclude them. *See Hendrix*, 609 F.3d at 1194 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert" (citation modified)).

### C. Smith's Methodology Is Unreliable

Smith's self-described "methodology" provides further reason to render her opinions unreliable. Smith states that she (1) "[i]dentified the stated basis

for suspicion and discipline"; (2) "[a]ssessed whether the employer's process reflected core HR investigation principles"; (3) "[c]onsidered HR best practices"; and (4) "[e]valuated whether the process reflected procedural fairness." (Report at 5.) However, Smith confirmed that she developed this methodology herself (Smith Dep. 105:6–7), and that it has never been published in any journal or professional resource (*id.* 105:8–10), let alone peer-reviewed (*id.* 105:11–13). When asked whether this methodology is "generally accepted in any professional or scientific community," Smith could only say: "I think in the human resource community that this methodology would make sense." (*Id.* 105:22–106:4.) Smith's belief does not make it so. Her *ad hoc* methodology and unfounded opinions have no place in the courtroom. They are unreliable.

## CONCLUSION

For these reasons, the Court should exclude Smith's testimony and opinions.

Dated: August 14, 2026

Respectfully submitted,

*/s/ Thomas R. Chiavetta*

Thomas R. Chiavetta (*pro hac vice*)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3975
tchiavetta@jonesday.com

*Attorneys for Defendant CSX Transportation, Inc.*

**LOCAL RULE 3.01(g) CERTIFICATION**

I certify that I have conferred with opposing counsel via e-mail and Plaintiffs oppose this motion.

*Thomas R. Chiavetta*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2026, a true and accurate copy of the foregoing was filed using the CM/ECF system which will send notification of such filing to the Court and Plaintiff's counsel.

*/s/ Thomas R. Chiavetta*