**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

<table>
<tr>
<td>Michael Blanton,<br><br>Plaintiff,<br><br>v.<br><br>CSX Transportation, Inc.,<br><br>Defendant.</td>
<td>Case No. 3:24-cv-00922-TJC-PDB<br><br>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE KAREN SMITH</td>
</tr>
</table>

## INTRODUCTION

This case is about whether CSX Transportation, Inc. violated the rights of Michael Blanton when, in response to his use of approved intermittent FMLA leave over Christmas 2020, CSX chose to flag, charge, and terminate him for what it considered to be a suspicious pattern of FMLA usage.

Plaintiff's expert witness Karen Smith is an experienced human resources professional who has directly administered FMLA leave, conducted workplace investigations, and reviewed discipline and termination decisions over her twenty years of progressively responsible human resources experience. Smith's opinions in this case are narrow. She will explain accepted human resources investigation practices and compare CSX's process to those practices.

Most importantly, CSX made materially the same arguments only months ago in *Brown v. CSX Transportation, Inc.*, another FMLA-retaliation case in this District involving CSX's claimed good-faith belief that an employee misused their approved intermittent leave. No. 8:24-cv-2777-VMC-LSG, Doc. 200 (M.D. Fla., Feb. 24, 2026). The Court in *Brown* rejected CSX's arguments. The same result should follow here.

Like the expert witness in *Brown*, Smith's report identifies her experience, the materials she considered, a methodology, opinions based on her experience and SHRM authority, and express limitations. Any dispute about the significance of a fact or the persuasiveness of her conclusion may be confronted using ordinary trial tools such as cross-examination.

## FACTUAL BACKGROUND

Plaintiff Michael Blanton worked for Defendant CSX Transportation, Inc. from 2000 up until his termination in 2021. ECF No. 42-2, at 20:1-6. Blanton worked as a brakeman, conductor, and engineer. *Id.* at 18:7-8, 19:17-18. As a trainman, Blanton did not have a set schedule; CSX could essentially call him to work 24/7, 365 days per year. *Id.* at 26:8-27:1. Blanton suffered from a number of medical conditions. ECF No. 42-3. Because Blanton could not safely do his job when his conditions flared up, he applied for intermittent FMLA leave, which CSX approved. ECF No. 42-3, ECF No. 42-4.

Blanton's conditions flared up on December 24, 2020. ECF No. 42-10. Accordingly, he marked off on FMLA at 9:52 a.m. *Id.* When his condition's flare up subsided, and Blanton felt able to work safely once again, he marked up on December 25, 2020, at 9:43 a.m. *Id.* Thereafter, CSX sent Blanton a letter charging him with a rule violation for what it called "misuse" of his FMLA for marking off over the Christmas holiday. ECF. No. 42-5. Pursuant to his union's collective bargaining agreement, Blanton went on to attend an investigatory hearing. ECF No. 42-6. At it, CSX management acted in the roles of prosecutor and judge. CSX presented evidence of Blanton's usage, its supposed pattern, without any evidence that Blanton did not suffer a flare up on the dates in question. *Id*. at 17:16-23. After the hearing, CSX fills yet another role as the jury when it determined that CSX had proved its charge and terminated Blanton. ECF No. 42-17.

Plaintiff retained Expert Witness, Karen Smith, to provide her opinion as to CSX's process and decision to terminate Blanton as it compares to industry standards in the human resources space. ECF No. 44-1.

## LEGAL STANDARD

Expert opinion testimony is admissible if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable

principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. *See*, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). This standard is applicable to all expert testimony, whether it is 'scientific' knowledge, or based on 'technical' or 'other specialized' knowledge. *Whelan v. Royal Caribbean Cruises Ltd.,* 976 F.Supp.2d 1328, 1331 (S.D. Fla. 2013).

The Eleventh Circuit has established a three-part inquiry to determine whether expert testimony should be admitted under *Daubert*.

> "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized knowledge, to understand the evidence or to determine a fact in issue."
>
> *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005).

The party seeking to introduce expert testimony bears the burden of satisfying these criteria by a preponderance of the evidence. *Whelan*, at 1331. Importantly, this standard sets forth the district court judge's gatekeeping obligation as it pertains to expert testimony. *Id.*

## ARGUMENT

### I. *Brown* rejected materially identical arguments by CSX and supports admission of Smith's testimony.

*Brown* addresses the same defendant, the same type of claim, the same asserted honest belief defense, the same company investigation regarding alleged holiday misuse, and substantially the same objections. CSX argued that the expert failed to identify specific sources, relied on insufficient facts, drew broad conclusions, mischaracterized the record, offered irrelevant opinions, and invaded the jury's province. *Brown*, No. 8:24-cv-2777-VMC-LSG, Doc. 200 (M.D. Fla., Feb. 24, 2026). The court was not persuaded.

On reliability, *Brown* held that a human resources expert may opine as to whether a party complied with industry standards and that reliance on Society for Human Resources Management (SHRM) standards and professional experience supplied an adequate methodology. *Id.* at 8-12. On relevance, *Brown* rejected the premise at the center of CSX's present motion, that investigation quality testimony is irrelevant because the jury decides only whether CSX honestly believed leave was misused. But whether a company has an honest belief is not only subjective. When an employee can show that an employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process unworthy of credence, then "any reliance placed by the employer in such a process cannot be said to be honestly held." *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 854 (4th Cir. 2001) (citation omitted). The *Brown* Court held that human resources norms provide a useful backdrop for evaluating

honest belief and allowed the expert to testify that CSX failed to follow industry standards in investigating suspected FMLA misuse. *Id.* at 18-22.

Smith's testimony fits the category *Brown* approved and is more carefully cabined. CSX does not meaningfully distinguish *Brown*. The Court should follow that recent, directly relevant decision.

## II. Smith is qualified to testify competently regarding human resources industry standards.

### a. Smith's nearly twenty years of directly relevant human resources practice satisfies Rule 702.

Rule 702 does not require a college degree. Indeed, Rule 702 itself states that a witness may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Ev. 702. The Eleventh Circuit emphasized this standard for Rule 702 qualification in a recent decision. *DISH Network L.L.C. v. Fraifer*, 2026 WL 2267372 (11th Cir., Aug. 6, 2026). In *DISH Network L.L.C.*, the Eleventh Circuit allowed a witness to testify as an expert "in light of his extensive experience" where the party opposing his testimony "cited no caselaw requiring an expert to possess technical training or education." *Id.* at *9. The Court goes on to instruct that, if an expert witness is relying solely or primarily on experience, then the witness "must explain how that experience leads to conclusion reached, why that experience is a sufficient basis for opinion, and how that experience is reliably applied to the facts." *Id.* at *7 (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment). Here, Smith's report

explains her experience, including nearly two decades of administering FMLA leave, conducting workplace investigations, and participating in discipline and termination decisions. She now leads human resources for a multi-state workforce of approximately 1,100 employees. Her SHRM-SCP and SPHR certifications further support her specialized knowledge. It is this experience that she applied to the facts of the instant case when determining that CSX's investigatory process and consequent discipline of Blanton was not in line with human resources industry standards.

CSX emphasizes Smith's lack of prior expert engagements, publications, and a college degree. Those are cross-examination points, not elements of Rule 702. Rule 26(a)(2)(B) requires disclosure of prior testimony and publications when they exist; it does not make them credentials. Otherwise, no qualified professional could testify as an expert for the first time.

Nor must Smith have worked for a railroad or overseen union employees. She is not interpreting operating rules, crew-call procedures, or the collective bargaining agreement. She will address general human resources practices for investigating suspected misuse of FMLA leave and making a termination decision. Industry specific distinctions go to weight. In *Goines v. Lee Memorial Health System*, the court held that a professional's general experience qualified her to testify about standard human resources practices, and that the absence of experience as a hospital human resources officer went to the weight rather

than the admissibility of the evidence. 2019 WL 1101878, at *5-6, (M.D. Fla., Mar. 8, 2019). Smith's experience with leave, investigations, and discipline, is the relevant experience here, regardless of what industry that experience was gained in.

CSX's reference to Plaintiff's counsel's representation of Smith's husband likewise concerns asserted bias, not qualification. CSX may explore the relationship before the jury; it is not ground for exclusion under Rule 702.

## III. Smith's methodology is sufficiently reliable.

Smith did not merely announce a result. She identified CSX's stated basis for suspicion, assessed that basis for completeness and assumptions, considered practices for addressing suspected FMLA misuse based on her experience, and evaluated procedural fairness. She then organized her opinions around the process deficiencies she identified. This process is supported by her experience. She has administered FMLA leave, investigated alleged policy violations, and reviewed discipline and termination throughout her career. The report connects this experience to her expert opinion as to CSX's process.

CSX argues that Smith's method has not been published, peer-reviewed, tested, assigned an error rate, or formally validated. Those factors are better suited for a scientific method. Smith's expert opinion reflects her specialized

knowledge, which is permitted under *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

*Brown* rejected a virtually identical argument by CSX. It held that a human resources expert could reliably rely on SHRM standards and professional experience, and treated alleged methodological flaws, or source issues, as cross-examination issues. No. 8:24-cv-2777-VMC-LSG, Doc. 200, at 8-17. Smith likewise relies on SHRM-based certifications and continuing education, Department of Labor guidance, the recertification framework, and her direct experience in leave administration, investigations, and terminations. These are sufficient standards and sources under Rule 702.

Smith's report references social media reviews or surveillance. These are examples of potential corroboration methods, not universal legal requirements. Whether a cited article lists a particular example and whether a given tool was proportionate here are subjects for cross examination. A dispute over one example, pulled from her specialized knowledge and experience, does not make an entire methodology unreliable.

As for the facts reviewed when preparing for her report, Smith reviewed materials sharing CSX's charge, the asserted pattern, its pre-charge process, evidence considered (and omitted), available corroboration measures not taken, and discipline. These documents alone were sufficient to provide a basis for an opinion limited to the documented human resources process.

The rules do not require review of every document or an independent interview of every witness. Alleged factual gaps generally affect weight. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345-46 (11th Cir. 2003). *Brown* held that asserted factual errors and conflicts in a human resources expert's report went to credibility could properly be addressed via cross examination. No. 8:24-cv-2777-VMC-LSG, Doc. 200, at 13-17.

CSX identifies prior warnings, other holiday mark offs, the CBA, decision-maker communications, and the medical certification as materials it believes Smith should have reviewed. Those points do not invalidate her method or affect her opinion as to CSX's process of investigating suspected FMLA misuse. Smith does not opine on the CBA, Blanton's diagnoses, or CSX's subjective state. CSX can present each omitted fact on cross examination and ask whether it charges her view.

CSX next attacks Smith for considering recertification because the regulation is permissive. Plaintiff does not contend, and Smith will not testify, that CSX was legally required to recertify Blanton before discipline. Her opinion is that recertification was an available HR tool that could have tested whether the pattern CSX identified was consistent with the certified need for intermittent leave, and that its nonuse is one factor to consider when evaluating whether CSX's investigation was reasonably informed and considered such that CSX had an honest belief when it terminated Blanton.

## IV. Smith's testimony would assist the trier of fact.

### a. Human resources investigation practices are outside the ordinary juror's experience.

Per the CBAs governing the relationship between CSX and its employees, CSX is to hold an investigatory hearing before disciplining its union employees. That fact, without more, may cause an ordinary juror to believe that because a hearing took place at all, it was patently fair. This is not an accurate representation. Smith's testimony will give jurors a backdrop against which to compare CSX's practices when she explains how human resources industry standards guide employers who suspect an employee is misusing their FMLA leave. Smith provides that specialized framework without deciding the facts.

*Goines* recognized that testimony regarding human resources industry standards rests on knowledge unlikely to be held by the average juror and can assist the jury. 2019 WL 1101878, at *8. *Brown* reached the same conclusion in the FMLA-misuse context. No. 8:24-cv-2777-VMC-LSG, Doc. 200, at 18-20.

Indeed, CSX's own honest belief defense makes its investigative process relevant. The jury must be able to evaluate how this asserted belief was formed: what information was sought, what was ignored, whether contrary information was considered, and whether the decision was supported before termination. A departure from ordinary professional methods may support –

though it does not compel – an inference that the asserted belief was not genuinely held. This reasoning was adopted by the Court in *Brown*. No. 8:24-cv-2777-VMC-LSG, Doc. 200, at 18-20.

**b. Smith's opinions do not usurp the jury.**

An expert may offer an opinion bearing on an ultimate factual issue so long as she does not direct the verdict or supply a legal conclusion. Fed. R. Evid. 704(a); *United States v. Grzybowicz*, 747 F.3d 1296, 1310 (11th Cir. 2014). *Brown* rejected CSX's identical argument because the human resources expert's views could inform the honest belief determination without dictating the result. No. 8:24-cv-2777-VMC-LSG, Doc. 200, at 21-23.

Smith may explain why, in her professional judgment, excluding nonholiday FMLA use and other holidays worked inform CSX's pattern analysis, failing to speak with Blanton before issuing charges, and terminating him without independent corroboration reflects an incomplete process. CSX may dispute every premise and conclusion, and the jury may reject the opinion. That is not usurpation.

**V. Any legal conclusion concern can be addressed by a narrow limitation.**

Smith expressly disclaims legal and medical conclusions. She may explain human resources standards, describe available human resources tools, and opine as to whether CSX's processes reflected those standards. She will

not tell the jury that CSX violated the FMLA, retaliated against Blanton, was legally required to use recertification, or lacked an honest belief as a matter of law. This limit is what *Brown* permits. No. 8:24-cv-2777-VMC-LSG, Doc. 200, at 20-22, 24-25. It excluded legal conclusions but permitted the human resources expert to testify that CSX failed to comply with *industry standards* in investigating suspected FMLA misuse. *Id.*

## CONCLUSION

For the foregoing reasons, this Court should deny Defendant's motion and permit Karen Smith to testify as to her expert opinion.

**PLAINTIFF'S COUNSEL**

Dated: August 28, 2026

/s/ Gracie L. Wendt

Gracie L. Wendt (WI 1142856)*
Nicholas D. Thompson (MN 389609)*
CASEY JONES AND BOLT LAW
525 Junction Road, Suite 6500
Madison, WI 53717
Phone: (872) 201-4244
Email: gwendt@caseyjones.law
Email: nthompson@caseyjones.law

*Specially Admitted

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ Gracie L. Wendt
Gracie L. Wendt