**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MICHAEL BLANTON,

Plaintiff,

v.

CSX TRANSPORTATION, INC.,

Defendant.

CASE NO. 3:24-CV-00922

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO**
**<u>EXCLUDE OPINIONS AND TESTIMONY OF KAREN SMITH</u>**

Karen Smith's opinions and testimony should be excluded in their entirety. As a threshold matter, Smith is not qualified to offer expert testimony in this case. Most notably, she has never served as an expert witness, has no experience with unionized workforces, and could only recall being involved in a single FMLA-misuse investigation in her entire career – one that resulted in no discipline. Given her lack of qualifications, it comes as no surprise that Smith was not retained for her expertise. Instead, she came to serve as an expert in this case because she met Plaintiff's counsel while testifying in her husband's lawsuit against CSX – an ongoing case in which Plaintiff's counsel represents Smith's husband. Blanton does not dispute any of this in his Opposition. Instead, he asks the Court to overlook these disqualifying defects and admit her testimony anyways. The Court

should not. A convenient connection to Plaintiff's counsel is no substitute for the qualifications that Rule 702 demands.

Beyond these threshold defects, Smith's opinions are irrelevant to the actual issues in this case, rest on an unsupported view of the FMLA, lack any reliable methodology, and would unfairly prejudice and mislead the jury. Blanton does not adequately rebut these additional defects. Indeed, in the argument section of his Opposition, Blanton does not cite any record evidence a single time in his Opposition. The Court should exercise its gatekeeping function and exclude Smith's opinions and testimony.

## I. THE COURT SHOULD EXCLUDE SMITH'S OPINIONS AND TESTIMONY.

Blanton bears the burden of establishing the admissibility of Smith's testimony. *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010). He has failed to do so.

### A. Smith Is Not Qualified to Testify as an Expert.

The Court must first determine whether "the expert is qualified to testify competently." *Id.* Smith is not. She has never (a) served as an expert witness, (b) published or authored anything in her field, or (c) presented externally on any HR topic, and lacks any meaningful HR experience relevant to this case. (Ex. 44-2 ("Dep.") at 52:20–53:7, 53:16–54:18, 56:1–3.)

Blanton cites *DISH Network LLC v. Fraifer*, 184 F.4th 1309 (11th Cir. 2026), for the proposition that Rule 702 does not necessarily require technical training or education. (Doc. 45 ("Opp.") at 6.) But the *DISH* expert had 12 years investigating the precise conduct at issue and supervised over 100 such investigations. *DISH*, 184 F.4th at 1322. That expert also "explain[ed] *how* that experience le[d] to the conclusion reached, why that experience [was] a sufficient basis for the opinion, and how that experience [was] reliably applied to the facts." *Id.* (citation omitted). Smith's own experience pales in comparison. She recalled only a *single* FMLA-misuse investigation in her entire career, which resulted in neither termination nor discipline. (Dep. at 24:7–27:6, 27:11–20, 52:9–19.). She is not qualified to give expert testimony on that topic.

Nor does *Goines v. Lee Memorial Health System*, 2019 WL 1101878 (M.D. Fla. Mar. 8, 2019) support allowing Smith to testify as an expert here. (Opp. at 7–8.) True, the *Goines* court permitted an HR expert to testify even though she had never worked for a hospital—the industry at issue in that case. *Id.* at *4. Yet that expert had a J.D., 19 years of experience as an HR consultant, and was a nationally-recognized speaker and published author on employee relations. *Id.* at *3. Smith has no such credentials. She may well be a competent HR manager, but she is not an expert by any stretch of the imagination.

Finally, Blanton argues that Smith's relationship with Plaintiff's counsel is irrelevant; it goes to "asserted bias," he claims, and "not qualification." (Opp. at 8.) He misses the point. Plaintiff's counsel did not seek out Smith because of her credentials; he just happened to meet her because he also represents Smith's husband in his own separate lawsuit against CSX. These circumstances in and of themselves might not be disqualifying, but they should inform the analysis of whether Smith truly is qualified to testify as an expert. For all of the reasons previously stated, she is not qualified to do so.

**B. Smith's Testimony Is Irrelevant and Will Not Assist the Trier of Fact.**

**1. Blanton Confuses the Governing Law.**

Relying on the Fourth Circuit's "reasonably informed and considered" standard – which is inconsistent with Eleventh Circuit law (*see* Doc. 50 (CSX's MSJ Reply) at 3) – Blanton argues that Smith's opinions are relevant to whether CSX's investigation and good-faith belief were "reasonable[]" (Opp. at 5–6), essentially complaining that his discipline was unfair. In the Eleventh Circuit, whether discipline is "prudent or fair" is a different question than whether it was retaliatory. *Damon v. Fleming Supermarkets*, 196 F.3d 1354, 1361 (11th Cir. 1999). That question can only be answered by examining CSX's actions to determine whether it made an "honest choice"; how other employers might have responded is irrelevant. (*See* Doc. 50 (CSX's MSJ Reply) at 2.)

Indeed, CSX's alleged noncompliance with "HR industry standards" "does not make it any more likely that CSX retaliated." (Doc. 44-3 ("*Pack Daubert* Opinion") at 4.) There is a critical distinction between deviating from a company's *own* procedures—which "might be probative of retaliation," and having "different procedures from other companies"—which "does not show that CSX's explanation for terminating [the plaintiff] is 'unworthy of credence.'" (*Id.* at 4). Smith measures CSX against her personal view of what other employers would do—not CSX's own policies—testimony that adds nothing to the jury's analysis.

**2. Smith's Views Are Legal Conclusions.**

Blanton does not dispute that Smith cannot offer legal conclusions; he claims she has not done so, noting that she "expressly disclaims legal and medical conclusions." (Opp. at 12.) But just because Smith says she is not making legal conclusions does not make it so. Her report is littered with them. (*See* Mot. at 15–18.) Even the *Brown* court—on which Blanton heavily relies—agreed that an HR expert "may not offer legal conclusions during her testimony" and excluded portions of the expert's report that "opine[d] or impl[ied] that CSX's policies and procedures regarding suspected FMLA misuse violate the FMLA." *Brown v. CSX Transp., Inc.*, 2026 WL 508505, at *7–8 (M.D. Fla. Feb. 24, 2026). Worse yet, Smith attempts to explain the law and tell the jury what result to reach. (*See* Doc. 44-1 ("Report") at 6–7).

### 3. Smith's Legal Conclusions Are Inconsistent with Governing Law.

Smith also misinterprets the law. Her report treats recertification as a central "compliance tool" and faults CSX for not using it—even though she concedes the regulation is permissive. (Report at 4; Dep. at 90:13–20.) Blanton tries to recharacterize that opinion by saying Smith is "not contend[ing]" that CSX was legally required to recertify Blanton. (Opp. at 10). Whatever label Blanton applies, the opinion presupposes that recertification is a prerequisite to lawful discipline for FMLA abuse. It is not. (*See* Mot. at 13 (citing cases where courts have upheld discipline for FMLA abuse without requiring recertification).)

## C. Smith's Testimony Is Unreliable.

### 1. Smith Has Not Adequately Identified the Source of the "HR Standards" She Purports to Apply.

Smith failed to identify the source of the "HR industry standards." (Mot. at 21–23.) Blanton responds that "Smith d[oes] not merely announce a result," pointing to SHRM standards, Department of Labor guidance, and Smith's professional experience. (Opp. at 8–10.) But Smith's own testimony is telling. When asked whether her "core HR investigation principles" are written down anywhere, she testified: "Written, no." (Mot. at 22.) Her methodology has never been published, tested, or peer-reviewed—she developed it herself. (*Id.* at 26.) And when asked whether it is "generally accepted," she could only say: "I think in the human resource community that this methodology would make sense." (*Id.*) That

is unreliable *ipse dixit*. Worse still, Smith cannot even locate her own standards in the sources she cites. She could not identify any SHRM or other publication supporting her opinions—including her suggestions that CSX should have conducted a social media review or hired private investigators. (Mot. at 22.) Smith's failure to adequately identify her sources is grounds to exclude her testimony. *Cf. Easton v. Asplundh Tree Experts, Co.*, 2017 WL 4005833, at *4 (W.D. Wash. Sept. 12, 2017).

**2. Smith's Analysis Is Not Based on Sufficient Facts or Data.**

Smith reviewed only materials selected by Plaintiff's counsel, omitting the CBA, Blanton's FMLA medical certification, discipline correspondence, and all deposition testimony other than a 2018 deposition taken two years before the events at issue. (Mot. at 23–25.) Blanton responds that alleged factual gaps "generally affect weight," citing *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345–46 (11th Cir. 2003). (Opp. at 9–10.) That is wrong. Under the 2023 amendments to Rule 702, whether testimony is "based on sufficient facts or data" is a "critical question" that goes to admissibility and cannot be deferred until trial. *See* Fed. R. Evid. 702 advisory committee's note to 2023 amendments.

**D. The Court Should Follow *Pack* — Not *Brown* — and Exclude Smith's Testimony in Its Entirety.**

Blanton's reliance on *Brown*, 2026 WL 508505, is misplaced. Even *Brown* excluded the expert's legal conclusions and opinions on matters no longer at issue.

*Id.* at *2, 7–8. *Brown* took at face value the expert, Beth De Lima's, claim that she "applied generally accepted HR standards as set forth by SHRM" despite her failure to identify any specific SHRM publication (*see Easton*, 2017 WL 4005833, at *4)—an approach the *Pack* court squarely rejected. Moreover, *Brown* failed to address the inconsistency between the expert's opinions and legal authority establishing that neither a "curing process" nor a second/third medical opinion is a prerequisite to discipline for FMLA abuse. (*See* Mot. at 13).

The better authority is *Pack v. CSX Transp., Inc.*, No. 3:24-cv-0688 (S.D.W. Va. May 6, 2026). On relevance, *Pack* held that "CSX's alleged noncompliance with industry standards does not make it any more likely that CSX retaliated against *Pack*." (*Pack Daubert* Opinion at 4.) On reliability, *Pack* found that because "neither Pack nor De Lima has identified the basis for De Lima's opinion and testimony, they are too unreliable to be admitted under Rule 702." (*Id.* at 5.) *Pack* emphasized that the Court's "gatekeeping function requires more than simply 'taking the expert's word for it.'" *Id.* (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments). And in this case, that gate should be closed: Smith is not an expert and should not be allowed to testify as such.

* * *

For these reasons, and the reasons set forth in CSX's Motion, this Court should exclude the opinions and testimony of Karen Smith.

Dated: September 25, 2026

Respectfully submitted,

*/s/ Thomas R. Chiavetta*

Thomas R. Chiavetta (*pro hac vice*)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3975
tchiavetta@jonesday.com

*Attorneys for Defendant CSX Transportation, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2026, a true and accurate copy of the foregoing was filed using the CM/ECF system which will send notification of such filing to the Court and Plaintiff's counsel.

*/s/ Thomas R. Chiavetta*